**STATE of Missouri, Respondent,**

v.

**Tranchilla McCRARY, Appellant.**

**No. 45104.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 19, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied
May 26, 1983.

Application to Transfer Denied
June 30, 1983.

William J. Shaw, Public Defender, Jane B. Phillips, Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for respondent.

REINHARD, Judge.

Defendant was convicted by a jury of the offense of robbery in the second degree, a violation of § 569.030, RSMo. 1978. He was found to be a persistent offender and was sentenced to an extended term of 30 years' imprisonment. He appeals. We affirm.

Defendant does not challenge the sufficiency of the evidence. On March 31, 1981, Ruth Tucker was working alone in a bread store in North St. Louis County. At approximately 4:45 p.m., a woman, later identified as Gretchen Patton, entered the store alone. Two black males then entered the store and the woman spoke with them. Miss Tucker went to the back room for a moment and as she emerged from it, one of the men, later identified as defendant, hit her in the face with his fist and pushed her to the floor. He tried to remove three rings from her finger but was unsuccessful so he ordered her to remove them. He then asked her "where the money was." After Miss Tucker told him she had taken it to the bank, he began to look through the boxes in the storeroom.

Gretchen Patton approached Miss Tucker, who was lying on the floor, pointed a pistol at her and repeatedly asked defendant, "Should I kill her now?" He did not reply. After the three left, Miss Tucker noticed that her purse containing $91.00 was gone. It was never recovered. She testified, without objection, that $270.00 was taken from the store.

David Wilson, a 10 year old boy, had been on his way to the bread store to buy a soda when he noticed a car parked in the back with a man in it and two persons running toward it. He remembered the license number because he thought it unusual for anyone to park in the back of the store. He did not get the color of the car, nor the state which issued the plate, but he memorized the number and he noted the car had a dent on the driver's side. He saw a purse in the hand of one of the persons, but he did not recall which one. He went inside the store and reported the license number to Miss Tucker, who was on the phone calling the police. She reported the robbery and gave them the license number of the car.

Detective Carl Clemons of the Ferguson Police Department received a description of the car and shortly thereafter, saw it parked near a residence at 275 South Dade.

He had seen it parked there on previous occasions. He testified without objection that Mrs. Turner, whose children were named Spears; lived at that address. The occupants of the house were ordered to leave. Six persons exited the residence, including defendant, Gretchen Patton and Page Spears. The officer further testified, without objection, that Mrs. Turner stated that Gretchen Patton, McCrary and Page Spears had returned to the house not more than 10 minutes before and they ran directly to the basement. The police searched the basement after obtaining Mrs. Turner's consent and found a revolver and a shirt under a mattress.

Approximately twenty minutes after the robbery, David Wilson and Miss Tucker were transported in a police car to the Turner-Spears residence, 1.4 miles from the store. As they arrived, David identified the car parked in front as the one he had seen at the store. In front of the house, police had defendant, Page Spears and Gretchen Patton seated on the grass, handcuffed and surrounded by police. David and Miss Tucker identified the three as the robbers.

A search of Gretchen Patton produced three rings which the victim identified as hers and $80.00 in cash. Mrs. Turner signed a written consent authorizing a search of the house. In the basement, the police found more money behind a piece of paneling. David and Miss Tucker identified defendant at trial.

Defendant presented no evidence.

■ On appeal, defendant first contends the trial court erred in overruling his "motion to suppress the identification in that the pre-trial show-up was so impermissibly suggestive and conducive to an irreparable mistaken identification as to be fundamentally unfair." Defendant filed a motion to suppress the identification but failed to object to either Miss Tucker's or David Wilson's identification testimony at trial. Consequently, the matter has not been properly preserved for review and we must review defendant's point as plain error. *State v. Fields,* 636 S.W.2d 76, 79 (Mo.App.1982).

The procedure used by the police in allowing the witness to see the suspects in custody at the scene of the arrest is an approved procedure. *State v. Ralls,* 583 S.W.2d 289, 291 (Mo.App.1979); *State v. White,* 549 S.W.2d 914, 918 (Mo.App.1977); *See State v. Mitchell,* 558 S.W.2d 383 (Mo. App.1977) (victim and 10 year old eyewitness both identified defendant among 5 occupants of house at scene of arrest within thirty minutes of crime).

■ In determining whether a pre-trial confrontation between the accused and the witness is so tainted as to violate the accused's due process rights, we view the totality of the circumstances surrounding the confrontation. Each case must be judged on its own facts to ascertain if the confrontation gave rise to a "very substantial likelihood of irreparable misidentification." *State v. Bivens,* 558 S.W.2d 296, 299 (Mo. App.1977).

■ After examining the entire record, we have concluded there was not a very substantial likelihood of irreparable misidentification. Both the victim and the eyewitnesses had an opportunity to observe defendant in daylight hours. They next viewed defendant less than thirty minutes later. The shorter the time lapse between the time of the crime and the time the suspect is viewed, the greater the reliability of an identification. *State v. Ralls,* 583 S.W.2d 289, 291 (Mo.App.1979). There was no evidence of improper encouragement or undue influence by the police. *State v. Ralls,* 583 S.W.2d 289, 291 (Mo.App.1979). We find no error, let alone plain error.

■ In defendant's second and third points, he complains about the admission of hearsay testimony for which he made no objection and therefore requests that we examine it under the plain error doctrine. In point two, he attacks hearsay testimony of a police officer and in point three, he attacks the victim's testimony as to the amount of money taken from the cash register. Plain error occurs when error affecting the substantial rights of the defendant results in a manifest injustice or a miscar-

riage of justice. Rule 30.20. It cannot be said a manifest injustice or miscarriage of justice occurred given the fact defendant's guilt was strongly established by other evidence. *State v. Nylon,* 563 S.W.2d 540, 543 (Mo.App.1978).

In defendant's final point, he alleges the trial court erred in overruling defendant's *pro se* motion for a new trial because of ineffective assistance of counsel. A claim of ineffective assistance of counsel may be reviewed on direct appeal only where the record develops facts essential to a meaningful review of that point. *State v. Leigh,* 621 S.W.2d 515, 517 (Mo.App.1981). We do not find the requisite record here to review defendant's contention. Rule 27.26 is defendant's appropriate remedy for testing the validity of his claim.

Affirmed.

CRANDALL, P.J., and CRIST, J., concur.